**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE GARY S. KATZMANN, JUDGE**

| | |
|---|---|
| DEXTER DISTRIBUTION GROUP LLC F/K/A TEXTRAIL, INC., *ET AL*., | |
| Consolidated Plaintiffs, | Consol. Court No. 24-00019 |
| v. | |
| UNITED STATES, | |
| Defendant, | |
| and | |
| DEXSTAR WHEEL DIVISION OF AMERICANA DEVELOPMENT, INC., | |
| Defendant-Intervenor. | |

## REPLY TO DEFENDANT-INTERVENOR'S OPPOSITION TO ASIA WHEEL'S MOTION TO INTERVENE

Pursuant to the Court's order (ECF No. 33), Asia Wheel Co., Ltd. ("Asia Wheel") hereby replies to Defendant-Intervenor's opposition to Asia Wheel's motion to intervene in this consolidated action as Plaintiff-Intervenor (ECF No. 28) ("*Dexstar's Opp'n Br.*"). According to Defendant-Intervenor ("Dexstar"), "in a number of recent decisions on intervention in comparable situations, this Court has established that parties such as Asia Wheel do not meet the requirements for intervention by right or by permission of the Court." *Dexstar's Opp'n Br.* at 1. This is incorrect. Dexstar cites only one case involving a foreign producer's request to intervene in an action contesting a determination by U.S. Customs and Border Protection ("CBP") under the Enforce and Protect Act ("EAPA"), and that case **supports** Asia Wheel's intervention. The

remaining cases cited by Dexstar involve challenges to agency determinations made under other statutes and are inapposite. Furthermore, Dexstar downplays or overlooks that (1) Asia Wheel was an "interested party" in the contested EAPA investigation ("EAPA Investigation 7459") and (2) Asia Wheel is the manufacturer, exporter, and seller of the merchandise at issue in the very transactions that CBP found to have evaded the antidumping duty ("AD") and countervailing duty ("CVD") orders on trailer wheels from the People's Republic of China. *Certain Trailer Wheels 12 to 16.5 Inches from the People's Republic of China: Antidumping Duty and Countervailing Duty Orders*, 84 Fed. Reg. 45952 (Dep't Commerce Sept. 3, 2019) ("*AD/CVD Orders*").

## I.    ASIA WHEEL HAS A RIGHT TO INTERVENE UNDER RULE 24(a)(2) OF THIS COURT

Rule 24(a) "requirements are construed in favor of interventions." *Wolfsen Land & Cattle Co. v. Pac. Coast Fed'n of Fishermen's Ass'ns*, 695 F.3d 1310, 1315 (Fed. Cir. 2012). Here, contrary to Dexstar's arguments, each element required under Rule 24(a)(2) of the Rules of the U.S. Court of International Trade ("USCIT") for Asia Wheel's intervention of right is satisfied: (1) Asia Wheel has a legally protectable interest as an "interested party" under the EAPA and the seller of the transactions at issue; (2) Asia Wheel's interest in the action is direct and immediate; and (3) Asia Wheel's participation is necessary for adequate representation of its interest.

### A.    Asia Wheel Has Demonstrated a Legally Protectable Interest in the Transactions at Issue

In arguing that Asia Wheel has failed to "explain how . . . it {has} any interest in the property and transactions at all, much less a legally protectable interest{,}" *Dexstar's Opp'n Br.* at 5, Dexstar relies on inapposite cases involving different statutes. Contrary to Dexstar's misguided assertions, Asia Wheel satisfies the "legally protectable interest" requirement because its interest is recognized by the EAPA and is more than merely economic.

1.    **Asia Wheel is an "interested party" under the EAPA**

Citing "recent challenges to Section 232 duty exclusion decisions," which are inapposite, Dexstar asserts "that merely having participated in the challenged agency action in some role does not create a right that will necessarily allow intervention by right when that action is challenged before this Court." *Dexstar's Opp'n Br.* at 9-10 (citing *N. Am. Interpipe, Inc. v. United States*, 519 F. Supp. 3d 1313, 1324 (Ct. Int'l Trade 2021), *aff'd sub nom.*, *Cal. Steel Indus. v. United States*, 48 F.4th 1336, 1344 (Fed. Cir. 2022)).  There is, however, an important distinction between Section 232 and the EAPA.  Unlike Section 232, the EAPA expressly recognizes that a "foreign manufacturer, producer, or exporter" – such as Asia Wheel – is an "interested party" in an EAPA investigation.  19 U.S.C. § 1517(a)(6)(A)(i).  The U.S. Court of Appeals for the Federal Circuit ("CAFC") has held that Rule 24(a) requires "that 'the interest be one which the *substantive* law recognizes as belonging to or being owned by the applicant.'"  *Am. Maritime Transport, Inc. v. United States*, 870 F.2d 1559, 1562 (Fed. Cir. 1989) (quoting *New Orleans Public Service, Inc. v. United States Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984), *cert. denied*, 469 U.S. 1019 (1984)).  Because Asia Wheel is an "interested party" under the EAPA, that requirement is met here.

Attempting to address this obvious hole in its argument, Dexstar argues that, "{i}f simply being any type of interested party to an EAPA investigation were sufficient to have an interest that allowed intervention, the first clause of Rule 24(a)(2) would be mere surplusage, as that interest for all 'interested parties' would already be addressed under the second clause."  *Dexstar's Opp'n Br.* at 6.  Dexstar is wrong, however, because intervention by right under USCIT Rule 24(a)(2) requires not only a legally protectable interest, but also (1) a showing that the proposed intervenor's interest in the litigation is direct and immediate, such that it stands to gain or lose from the court's decision, and (2) a showing that the proposed intervenor's interest is not adequately addressed by

the existing parties.  *See Cal. Steel*, 48 F.4th at 1340.[1]

### 2.    Asia Wheel's interest is more than merely economic

While Dexstar correctly notes that "a 'legally protectable interest' {} has been held to require ***something more than merely an economic interest***{,}" *Dexstar's Opp'n Br.* at 6 (citing *Am. Maritime*, 870 F.2d at 1562), Asia Wheel has satisfied that requirement here.  In this regard, Dexstar continues to rely on inapposite cases, and the one case cited by Dexstar that arises in the EAPA context ***supports*** Asia Wheel's intervention.

Dexstar cites *Am. Maritime* and *Eregli Demir* for the proposition that Asia Wheel has failed to demonstrate an interest beyond economic harm.  *See Dexstar's Opp'n Br.* at 6 & 7 (citing *Am. Maritime*, 870 F.2d at 1562; *T.A.Ş. v. United States*, 639 F. Supp. 3d 1245, 1255 (Ct. Int'l Trade 2023) ("*Eregli Demir*").  Neither case, however, involved a foreign producer's attempt to intervene in an importer's appeal of an EAPA determination.  Rather, *Am. Maritime* addressed a shipping company's attempt to intervene in a competitor's appeal of the Maritime Administration's denial of a subsidy under the Merchant Marine Act of 1936, *see* 870 F.2d at 1559-60, while *Eregli Demir* concerns domestic producers' attempt to intervene in an importer's appeal of the International Trade Commission's refusal to reconsider an affirmative injury determination, *see* 639 F. Supp. 3d at 1248-49.

Here, in stark contrast, as the manufacturer, exporter, and seller of the trailer wheels at issue in the contested EAPA investigation, Asia Wheel was directly involved in the transactions

---

[1] Dexstar also notes that, despite the foreign producer/exporter's status as an "interested party" under 19 U.S.C. § 1517(a)(6)(A)(1), "CBP's implementing regulations provide that only the importer and the alleger . . . may present arguments to the agency during the EAPA investigation and administrative review."  *Dexstar's Opp'n Br.* at 2 (citing 19 C.F.R. §§ 165.26(a)(1) & 165.41(a)).  However, the EAPA itself, which is paramount, does not preclude interested parties other than the importer and alleger from presenting arguments to CBP in an EAPA investigation. *See* 19 U.S.C. § 1517.

(*i.e.*, the importers' entries) that are the subject of this action. Consequently, while Asia Wheel has suffered significant economic harm as a result of CBP's EAPA investigation, its interest in the action is not limited to economic harm. Further, in addition to being the manufacturer and seller with respect to the transactions at issue in this action, Asia Wheel suffered significant economic harm and damage to its reputation as a result of the contested EAPA determination and CBP's actions therein – including lost business (not only with the importers targeted in the EAPA investigation, but other U.S. customers as well), reduced production, layoffs of factory workers, substantially lower sales revenue, and unsold inventory.

According to Dexstar,

> If Asia Wheel's claimed economic interest was sufficient to create a right for Asia Wheel to intervene here, any entity that saw some impact from Asia Wheel's customers' actions would have the same right: the shipping companies, the customs brokers, even the dock workers who possibly could have handled more import sales if CBP's interest had not been turned to some of Asia Wheel's other exports.

*Dexstar's Opp'n Br.* at 8. But this claim is patently false. Unlike Asia Wheel, none of the entities described by Dexstar is an "interested party" under the EAPA or directly involved in the transactions at issue (as the manufacturer, exporter, and seller of the merchandise imported by the plaintiffs that was the subject of CBP's contested EAPA determination).

The court's decision in *Global Aluminum* further supports Asia Wheel's intervention as a matter of right in this action. In that case, the court granted a foreign producer's motion to intervene in an importer's appeal of an EAPA determination. *See Global Aluminum Distrib. LLC v. United States*, 579 F. Supp. 3d 1338, 1342 (Ct. Int'l Trade 2021). The court held that the foreign producer's interest in the action was not merely economic, given that it had contracted to sell goods to the importer that were not subject to antidumping or countervailing duties. *See id.* Similarly here, CBP's affirmative evasion determination in EAPA Investigation 7459 affects the status of the trailer wheels manufactured by Asia Wheel in Thailand (which were sold as nonsubject

5

merchandise, not subject to antidumping or countervailing duties).   Dexstar's attempt to distinguish *Global Aluminum* based on "a specific clause in {the exporter's} contract" hinges on a technicality and misses the salient point:  In each case, the foreign producer endeavored to sell goods free from AD/CVD liability.  In fact, absent Asia Wheel and its role as the manufacturer, exporter, and seller with respect to the transactions at issue in EAPA Investigation 7459, there would not have been an EAPA investigation of trailer wheels from Thailand in the first place.

### B.    Asia Wheel's Interest Is Directly and Immediately Related to the Action

"Intervention is proper only to protect those interests which are 'of such a *direct* and *immediate* character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment." *Am. Maritime*, 870 F.2d at 1561 (quoting *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1292 (D.C. Cir. 1980)).   As the manufacturer, exporter, and seller of the trailer wheels at issue in the contested EAPA investigation, Asia Wheel satisfies this test.  Asia Wheel was directly involved in the transactions (*i.e.*, the importers' entries) that are the subject of this action, and it stands to gain or lose based on the court's decision in this action.  In claiming otherwise, Dexstar ignores commercial reality and continues to rely on inapposite cases.

In claiming that Asia Wheel lacks a direct and immediate interest in the action, Dexstar wrongly asserts that "Asia Wheel's role in the EAPA investigations was entirely ancillary and subordinate." *Dexstar's Opp'n Br.* at 3.  To the contrary, as the manufacturer, exporter, and seller of the imported merchandise at issue in EAPA Investigation 7459, Asia Wheel's role is central.  Without Asia Wheel, there would not have been an EAPA investigation on trailer wheels from Thailand in the first place.  Dexstar also argues that "any decision by the Court on the challenged EAPA investigations would have no direct impact on the economic interests claimed by Asia Wheel." *Dexstar's Opp'n Br.* at 12.  To the contrary, because CBP's affirmative evasion determination thwarted Asia Wheel's effort to produce and sell trailer wheels free from AD/CVD

liability, Asia Wheel has a direct stake in this action. If the Consolidated Plaintiffs in this action ("Plaintiff Importers") prevail, Asia Wheel will be vindicated as a manufacturer and seller of trailer wheels produced in Thailand free from AD/CVD liability, its reputation will be restored, and its business prospects will improve.

Dexstar also relies on cases that are not on point. "For example," Dexstar argues, "in *American Maritime Transport*, the CAFC held that a cargo carrier's interest in avoiding subsidized competition if the government were to award a subsidy to a competing carrier was 'both indirect and contingent' . . . ." *Dexstar's Opp'n Br.* at 11-12 (citing 870 F.2d at 1562). Unlike here, however, in that case the proposed intervenor was not involved in the transactions underlying the basis for the government's decision. *See Am. Maritime*, 870 F.2d at 1562. Similarly, Dexstar stresses that courts have rejected "domestic producers' claims that this Court's decision in cases challenging agency determinations on exclusions for certain products from Section 232 duties would affect them because importers would not be induced to purchase domestic goods rather than imports . . . ." *Dexstar's Opp'n Br.* at 12 (citing *N. Am. Interpipe*, 519 F. Supp. 3d at 1326; *NMLK Pa., LLC. v. United States*, 553 F. Supp. 3d 1354, 1361 (Ct. Int'l Trade 2021)). Again, however, in those Section 232 cases the proposed intervenors were not involved in the transactions considered by the government and any possible future sales of the same merchandise by the proposed intervenors were speculative. *See N. Am. Interpipe*, 519 F. Supp. 3d at 1326; *NMLK*, 553 F. Supp. 3d at 1361.

### C. Without Participation, Asia Wheel's Interest Would Not Be Adequately Addressed

"{T}he proposed intervenors {also} must show that their 'participation could add some material aspect beyond what is already present.'" *Cal. Steel*, 48 F.4th at 1344 (quoting *Wolfsen*, 695 F.3d at 1318). "The burden of showing inadequacy of representation is 'minimal,' requiring

only a showing that an existing party's representation of {the proposed intervenor's} interests 'may be' inadequate as to some aspect of the case at bar.'" *Wolfsen*, 695 F.3d at 1315.  Contrary to Dexstar's claims, Asia Wheel has satisfied that burden here.

As discussed in Asia Wheel's motion to intervene, participation by the Plaintiff Importers alone "may be" inadequate because CBP's affirmative evasion determination is based entirely on the production method used by Asia Wheel to manufacture the trailer wheels at issue in Thailand. *See Asia Wheel Mot. to Intervene* at ¶10 (ECF No. 20).  Consequently, Asia Wheel is better positioned than the importers to elucidate the facts concerning its manufacture of trailer wheels in Thailand.  In response, Dexstar once again analogizes Section 232 cases, noting that,

> When domestic producers seeking to intervene in Section 232 exclusion challenges argued that they were in the best position to address factual issues that had been before the agency about domestic production capacity, this Court pointed out that 'the administrative records are closed,' so any ability to address such questions would not add materially to the case.

*Dexstar's Opp'n Br.* at 16 (citing *N. Am. Interpipe*, 519 F. Supp. 3d at 1325, 1328; *Cal. Steel*, 48 F.4th at 1344-45).  Asia Wheel, however, does not seek to add to the administrative record.  Rather, because Asia Wheel is the actual manufacturer of the merchandise at issue, it is better positioned than the Plaintiff Importers to address issues concerning its manufacturing operations before the Court.

Furthermore, Dexstar's actions – filing a 25-page brief in opposition to Asia Wheel's motion to intervene – belie its argument that Asia Wheel would not contribute anything meaningful to the presentation of the issues before this Court.

## II.    ASIA WHEEL ALSO MEETS THE REQUIRMENTS FOR PERMISSIVE INTERVENTION UNDER RULE 24(b)(1) OF THIS COURT

Even if Asia Wheel lacked the right to intervene under USCIT Rule 24(a)(2), the Court "may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal

statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." USCIT Rule 24(b)(1). In addition, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." USCIT Rule 24(b)(3). Here, Dexstar has failed to offer any justifiable reason to deny participation in this action to Asia Wheel, an "interested party" in the contested EAPA investigation, as well as the foreign producer and seller of the merchandise imported in the transactions at issue.

### A. Asia Wheel Has a Conditional Rights To Intervene by Federal Statute

Asia Wheel has conditional rights to intervene in this action under 28 U.S.C. § 2631(j)(1) and 5 U.S.C. § 702, because it would be "adversely affected or aggrieved" by an unfavorable Court decision. Here, Asia Wheel, as the manufacturer, exporter, and seller of the merchandise at issue, was adversely affected or aggrieved by CBP's affirmative evasion determination in EAPA Investigation 7459, which destroyed Asia Wheel's efforts to produce and sell trailer wheels to the Plaintiff Importers (and other importers) free from AD/CVD liability, deprived Asia Wheel of substantial business, and damaged to its reputation. If the Plaintiff Importers prevail, Asia Wheel would be vindicated as a manufacturer and seller of trailer wheels produced in Thailand free from AD/CVD liability, its reputation will be restored, and its business prospects will improve. Consequently, a ruling in favor of the Plaintiff Importers would provide relief to Asia Wheel, supporting its request for permissive intervention. *See N. Am. Interpipe*, 519 F. Supp. 3d at 1329 ("{A} proposed intervenor seeking permissive intervention pursuant to 28 U.S.C. § 2631(j)(1) must demonstrate that (1) it is threatened with injury in fact (2) from a decision of the court (3) that is redressable by a ruling in favor of the party on whose side the proposed intervenor seeks to intervene.").

In arguing that the Court's decision in this action will not impact Asia Wheel, Dexstar ignores commercial reality. Dexstar first argues that "the economic harm Asia Wheel has claimed

it suffered would have been due to independent actions of its customers, not the direct actions of CBP." *Dexstar's Opp'n Br.* at 18. Dexstar's contention, however, ignores that, but for CBP's imposition of interim measures and affirmative evasion determination, Asia Wheel's sales to the Plaintiff Importers would not have been treated as "covered merchandise" – subject to AD/CVD duties – and Asia Wheel would have been able to continue producing, exporting, and selling trailer wheels as products of Thailand free from AD/CVD liability. This harm to Asia Wheel resulted directly from CBP's actions and decision in EAPA Investigation 7459 – not from the independent actions of its customers. Asia Wheel's customers did not decide to subject their imports to AD/CVD liability. CBP did this.

Dexstar also claims that "Asia Wheel fails to explain how a decision by this Court on the duty rates its importers face on a discrete set of entries of merchandise that they had purchased from Asia Wheel in the past would give any relief to Asia Wheel on what Asia Wheel claims are sales that it already has lost." *Dexstar's Opp'n Br.* at 18-19. Here, however, Dexstar persists in its failure to recognize that Asia Wheel is the seller of the merchandise at issue in the very transactions CBP found to have evaded the *AD/CVD Orders* on trailer wheels from China (as further evidenced by Dexstar's continued reliance on Section 232 cases in which the proposed intervenors were not involved in the transactions at issue). *See id.* at 19-20 (citing *N. Am. Interpipe*, 519 F. Supp. 3d at 1331-32; *NMLK*, 553 F. Supp. 3d at 1363-64). CBP's affirmative evasion determination treated Asia Wheel's shipments to the Plaintiff Importers as "covered merchandise," impairing Asia Wheel's ability to sell Thai-origin trailer wheels to the Plaintiff Importers free from AD/CVD liability. In fact, the harm to Asia Wheel went beyond its sales to the Plaintiff Importers, as other U.S. customers canceled their orders with Asia Wheel to avoid the risk of AD/CVD liability. A favorable ruling from the Court in this action – reversing CBP's affirmative evasion

10

determination – is needed to provide necessary relief to Asia Wheel, including the restoration of its good name and reputation.

**B.    Asia Wheel's Claims Share Common Questions of Law or Fact with the Main Action**

Alternatively, the Court may also permit Asia Wheel to intervene because its claim shares a common question of law or fact with the Plaintiff Importers' actions.  Here, Dexstar argues that, because "Asia Wheel could not bring a claim challenging the EAPA determination" under 19 U.S.C. § 1517(g), it fails to satisfy this requirement for permissive intervention.  This argument is nonsensical, however, because § 1517(g) provides the right to intervene under USCIT Rule 24(a)(2).  In other words, permissive intervention under USCIT Rule 24(b)(1) would be meaningless if it could be blocked for failure to satisfy intervention of right under USCIT Rule 24(a)(2).  Furthermore, as demonstrated above, Asia Wheel was adversely affected or aggrieved by CBP's affirmative determination as to evasion in EAPA Investigation 7459 and, thus, has a claim against CBP's EAPA determination under 5 U.S.C. § 702.

**C.    Asia Wheel's Intervention Would Not Unduly Delay or Prejudice the Adjudication of the Rights of the Original Parties**

Lastly, Asia Wheel's intervention would not unduly delay or prejudice the adjudication of the original parties' rights within the meaning of 28 U.S.C. § 2631(j)(2) or USCIT Rule 24(b)(3).  Asia Wheel does not seek to expand the issues beyond those raised in the Plaintiff Importers' complaints, and the consolidated action remains at an early stage.  Nor does Dexstar allege that Asia Wheel's intervention would cause undue delay or prejudice.  Rather, Dexstar asserts that "Asia Wheel's claim is inconsistent with decisions of this Court, which have recognized that adding an additional party to a proceeding always brings *some* level of delay and prejudice."  *Dexstar's Opp'n Br.* at 23.  The standard under USCIT Rule 24(b)(3), however, is whether "the intervention will ***unduly*** delay or prejudice the adjudication of the original parties' rights"

(emphasis added) – not result in "some" delay or prejudice.  In any event, Plaintiff Importers *support* Asia Wheel's intervention, and Defendant is neutral on the question.  *See Asia Wheel Mot. to Intervene* at ¶19 (ECF No. 20).  In summary, none of the original parties – not even Dexstar – contends that Asia Wheel's intervention would cause undue delay or prejudice.

## III.    CONCLUSION

For the reasons discussed above, Asia Wheel respectfully requests that this Court grant its motion to intervene as Plaintiff-Intervenor in this action.

Respectfully submitted,

/s/ Jay C. Campbell
Jay C. Campbell
Chunfu Yan

White & Case LLP
701 Thirteenth Street N.W.
Washington, D.C. 20005
Tel: (202) 626-3600
Email: jcampbell@whitecase.com

*Counsel to Proposed Plaintiff-Intervenor Asia Wheel Co., Ltd.*

Dated:  April 15, 2024